UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JACQUELINE T. KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:06-cv-031-DFH-TAB |
| DANIEL R. CONSTANTINO, Individually | ) | |
| and in his Official Capacity as Investigator | ) | |
| for Marion County Prosecutor Carl | ) | |
| Brizzi, and CARL JOSEPH BRIZZI, III, in | ) | |
| his Official Capacity as Marion County | ) | |
| Prosecutor, | ) | |
| Defendants. | ) | |

ENTRY ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Jacqueline Knight filed this action under 42 U.S.C. § 1983 against

Daniel Constantino, individually and in his official capacity as an investigator for

the Marion County Prosecutor's Office, and Carl Brizzi, in his official capacity as

Marion County prosecutor, for violating her rights under the United States and

Indiana Constitutions.  Plaintiff also alleges that defendant Brizzi denied her

access to some of defendant Constantino's employment records in violation of the

Indiana public records statute, Ind. Code § 5-14-3-3.  In response, defendants

have moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6).

For the reasons explained below, the motion is granted in part and denied in part.

Although damages may be very modest, Knight has alleged sufficiently that

Constantino filed a false criminal charge against her, resulting in issuance of an

arrest warrant that caused her to come to the Prosecutor's Office to meet with him, where he demanded that she pay $50 as a condition of dismissal of the false criminal charge.  Knight may pursue claims against Constantino in his individual capacity for an unreasonable seizure of her person in violation of the Fourth Amendment to the United States Constitution and for deprivation of property without due process of law in violation of the Fourteenth Amendment.  The motion to dismiss is granted in all other respects.

### Applicable Standards

For purposes of a motion to dismiss, the court must accept as true all well-pleaded factual allegations contained in the complaint and must draw all inferences in favor of the plaintiff.  *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).  Under the liberal notice pleading standard in federal civil actions, the plaintiff is entitled to the benefit not only of those allegations but of any other facts she might assert that are not inconsistent with her allegations.  Defendants are entitled to dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Chaney v. Suburban Bus Div. of Regional Transp. Auth.*, 52 F.3d 623, 626-27 (7th Cir. 1995).

*Factual Allegations*

The court takes the following facts as true for purposes of defendants' motion to dismiss. On May 13, 2005, plaintiff Knight purchased furniture from a retailer in Indianapolis for $468. Cplt. ¶ 10. With the retailer's consent, she paid for the item using a post-dated check; the retailer agreed not to cash the check until June 24th. *Id.*, ¶ 12; Cplt. Exs. A, B. Shortly after June 24th the retailer attempted twice to cash the check – on June 29th and again on July 7th. Both attempts were unsuccessful. Cplt. ¶ 16. On July 29th, the retailer faxed a copy of the returned check to the Marion County Prosecutor's Office. Cplt. Ex. B.

On August 3rd, after learning of the deficiency, Knight went to the retailer and provided it with a $485 money order to cover the cost of the item and related bank charges the retailer had incurred. Cplt. ¶ 17. The next day, however, the Prosecutor's Office charged Knight with check deception under Ind. Code § 35-43-5-5. *Id.*, ¶ 19. Defendant Constantino, an investigator in the Prosecutor's Office, signed the sworn information used to charge Knight. Cplt. Ex. E. A probable cause affidavit was also filed with the information. Although the affidavit lists an employee of the retailer as swearing to its contents, no printed name was included under the signature line. Most important, the named retailer's representative later denied ever signing it. Cplt. Exs. B, F, O.

The affidavit contained numerous factual errors that were central to the issue of probable cause. The Indiana check deception statute provides that no

violation is committed when the payee or holder knows that the check is post-dated.  Ind. Code § 35-43-5-5(f).   The affidavit falsely stated that Knight's check was not post-dated. Under the check deception statute, it is also a defense to a criminal charge if the drawer pays the amount due, plus a service charge, within ten days after the payee or holder mails notice that the check has not been honored.  Ind. Code § 35-43-5-5(e).   The affidavit falsely stated that a ten-day notice had been sent on June 14, 2005, which was ten days before the date on the post-dated check.  The affidavit also stated that no payment had been received prior to its filing, while Knight had made full payment to the retailer one day earlier.

After the Prosecutor's Office filed the charge, Knight received on Saturday, August 6, 2005 a postcard informing her that there was an outstanding warrant for her arrest.  Knight contacted the Prosecutor's Office to turn herself in.  Cplt. ¶¶ 26, 27.   While en route to the Prosecutor's Office, Knight contacted Constantino and was told to come to his office with $50.  *Id.*, ¶ 29. When Knight arrived at the Prosecutor's Office, Constantino told her that if she paid the $50, the charge would be dismissed.  *Id.*, ¶ 30.   Knight paid the $50 in cash and received a receipt.  On August 9th, the Prosecutor's Office moved to have the case dismissed.  *Id.*, ¶¶ 31, 33.

*Discussion*

In Count I of her complaint Knight alleges that, because of the outstanding warrant for her arrest, her meeting with Constantino amounted to an unreasonable seizure that violated the Fourth Amendment to the United States Constitution and Article I, § 11 of the Indiana Constitution.  In Count II Knight claims that Constantino and Brizzi, by taking her $50, deprived her of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.  In Count III Knight asserts that the Prosecutor's Office violated Indiana's Access to Public Records Act, Ind. Code § 5-14-3-1 *et. seq.*

Defendants have moved to dismiss all counts.  They argue that:  (1) Knight was never seized under the Fourth Amendment and in the alternative that probable cause existed even if there was a seizure; (2) the payment was returned, precluding a due process claim; and (3) Knight's counsel was given all the records that the Prosecutor's Office held related to her request, fully complying with the Access to Public Records Act.  Defendants also argue that they are entitled to immunity from damages as state officials and as prosecutors, and that Constantino is entitled to qualified immunity.

I.      *Prosecutor as State Official*

As an initial matter, the court must dismiss the official capacity claims for damages against Constantino and the official capacity claim against Brizzi in Count II.  Federal suits that seek damages from state officials in their official capacities are outside the scope of Section 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).   Such defendants would be entitled to immunity under the Eleventh Amendment to the United States Constitution even if the statute authorized damages claims against them in their official capacities.  *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000); *Knox v. McGinnis*, 998 F.2d 1405, 1412 (7th Cir. 1993).  Indiana prosecutors are treated as state officials for purposes of *Will* and the Eleventh Amendment.  See *Bibbs v. Newman*, 997 F. Supp. 1174, 1178 (S.D. Ind. 1998), and authorities cited therein.

II.     *Unreasonable Seizure Claim*

Count I of the complaint alleges that Constantino seized Knight's person when she visited his office, and that this seizure constituted a false arrest in violation of the Fourth Amendment to the United States Constitution and Article 1, § 11 of the Indiana Constitution.  Cplt. ¶¶ 55-63.  Count I states a legally viable claim against Constantino in his individual capacity.  One can easily infer from the complaint that Knight contends that Constantino was responsible for securing the arrest warrant against her and that her surrender to that show of authority

amounted to a seizure of her person, though one that was brief in duration and relatively mild in terms of its conditions.

At this stage, giving plaintiff the benefit of her factual allegations and favorable inferences from them, the court must assume that Constantino knowingly and intentionally submitted a false accusation supported by a forged affidavit to cause the issuance of an arrest warrant for Knight. Such conduct would violate the Constitution, at least if it resulted in a seizure of plaintiff; defendants do not contend otherwise. See *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986) (denying immunity to police officer who had caused unconstitutional arrest by presenting judge with complaint and supporting affidavit that failed to establish probable cause).

Defendants argue that Knight never suffered a "seizure" within the meaning of the Fourth Amendment. Of course, not all encounters between law enforcement and citizens constitute seizures, but defendants' effort to portray Knight's encounter with Constantino as a voluntary one is not persuasive. The Seventh Circuit has recognized three categories of police-citizen encounters: (1) an arrest, requiring probable cause; (2) an investigatory stop, limited to "a brief, non-intrusive detention" based on specific and articulable facts supporting reasonable suspicion of criminal activity; and (3) voluntary encounters involving no restraint on the citizen's liberty. *United States v. Scheets*, 188 F.3d 829, 836 (7th Cir. 1999).

Whether a seizure occurred is decided based on an objective standard.  The issue is whether, based on all the circumstances, a reasonable person would believe she was free to leave if she chose to do so.  *Id.*, at 836-37; *United States v. Boden*, 854 F.2d 983, 991 (7th Cir. 1988).  Depending on the circumstances, several factors may be relevant, including whether the encounter occurred in a public or private place, whether the suspect was informed that she was not under arrest and was free to leave, whether the suspect consented to or refused to talk with the officer, whether the officers removed the person to another area, and whether there was physical touching, display of weapons, or other threatening conduct, and whether the person eventually left without hindrance.  *Scheets*, 188 F.3d at 837, citing *United States v. McCarthur*, 6 F.3d 1270, 1276 (7th Cir. 1993), and *United States v. Withers*, 972 F.2d 837, 842 (7th Cir. 1992).

As applied to this case, and considering only the allegations in the complaint, Knight's response to an arrest warrant cannot fairly be deemed voluntary.  Knight was told that a warrant had been issued for her arrest.  This was not a summons to appear, cf. *McCullah v. Gadert*, 344 F.3d 655, 661 (7th Cir. 2003) (noting issue as to whether summons to appear in court would amount to seizure), let alone a request for a voluntary meeting.  Any law enforcement officer in Indiana was authorized to arrest Knight and to use reasonable force in doing so.  Knight arrived at the Prosecutor's Office and met with Constantino.  Constantino told her that if she gave him $50, presumably to cover the store's bank fees in dealing with the twice returned check, the charges against her would

be dropped.  One may reasonably infer from this that Knight understood that if she did not pay the $50, the charges would remain in place and she would be detained on the spot.

Knowing that a warrant for her arrest had been issued, a reasonable person in Knight's situation would not have felt free to leave unless and until Constantino told her she was free to go.  Knight was not merely invited in for a voluntary and consensual chat.  Constantino himself had signed the documents that led to issuance of the arrest warrant.  Cf. *Scheets*, 188 F.3d at 837 (no seizure occurred when subject agreed to accompany a federal agent and private security officer to casino security office, and where subject was told he was not under arrest and was free to leave through unlocked door next to his chair).

The defense theory is that a person who knows she is the subject of an arrest warrant and who meets with the law enforcement official who obtained that arrest warrant would feel free to leave the meeting any time she wished.  That theory defies common sense.  Knowing that the arrest warrant was active, Knight and any other reasonable person in her situation surely would have understood that she was not free to leave unless and until Constantino or someone else in authority told her she could leave.  The known existence of that warrant distinguishes this case from those cases dealing with less formal encounters between citizens and law enforcement, which often turn on the cited factors such

as whether officers displayed weapons or touched a person or otherwise restrained her movements.

Knight's claim is supported by language in Chief Justice Rehnquist's plurality opinion in *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Albright had been the subject of an arrest warrant. He learned of the warrant, surrendered to authorities, and was released on bail. *Id.* at 268. When identifying the issues, the Chief Justice explained that petitioner Albright was not claiming "a violation of his Fourth Amendment rights, notwithstanding the fact that his surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment." *Id.* at 271.

Defendants argue that *Albright* does not apply because the cited observation was only *obiter dictum* in a plurality opinion. The effort is not persuasive. The Chief Justice's comment reflected a shared understanding of an obvious point, that a person's surrender in response to an arrest warrant is a seizure under the Fourth Amendment. See also *Albright*, 510 U.S. at 276 (Ginsburg, J., concurring) ("Albright's submission to arrest unquestionably constituted a seizure for purposes of the Fourth Amendment."); *id.* at 289 (Souter, J., concurring in judgment) (recognizing "the Fourth Amendment seizure that followed when he surrendered himself into police custody"); *id.* at 307 (Stevens, J., dissenting) (initial seizure was constitutionally unreasonable and would have violated Fourth Amendment if conducted by federal officer); see also *Groom v. Fickes*, 966 F. Supp.

-10-

1466, 1474-75 (S.D. Tex. 1997) (surrender at U.S. Marshal's office after criminal indictment amounted to seizure under Fourth Amendment, but defendant's actions were objectively reasonable); *Niemann v. Whalen*, 911 F. Supp. 656, 668 (S.D.N.Y. 1996) (plaintiff was seized when she surrendered to state police barracks to be fingerprinted, photographed, and taken before judge: "A reasonable person under those circumstances would not have felt free to leave until the arraignment was complete and she was released on bail."); *Amato v. City of Richmond*, 875 F. Supp. 1124, 1144 (E.D. Va. 1994) (voluntary surrender in response to arrest warrant amounted to seizure under Fourth Amendment, but arrest was supported by probable cause), *aff'd mem.*, 78 F.3d 578 (4th Cir. 1996).

Constantino did not go so far as to fingerprint or book Knight, let alone to detain her overnight in jail, as occurred in *Albright* and in *Whiting v. Traylor*, 85 F.3d 581, 585 n.6 (11th Cir. 1996), and *White v. Wright*, 150 Fed. Appx. 193, 197 (4th Cir. 2005) (unpublished). In *Whiting* and *White*, each plaintiff had learned he was the subject of an arrest warrant. Each plaintiff surrendered to authorities in response. In *Whiting*, the plaintiff turned himself in and was detained overnight before he was released on bond. 85 F.3d at 583. The Eleventh Circuit held that the plaintiff had been seized for purposes of the Fourth Amendment, and it vacated the Rule 12(b)(6) dismissal of his claim. In *White*, the plaintiff voluntarily surrendered to authorities and was "detained briefly for fingerprinting and processing." The Fourth Circuit held that this sequence of

events also amounted to a seizure for purposes of the Fourth Amendment.  150 Fed. Appx. at 197, quoting the relevant passages of *Albright* and *Whiting*.

The lack of any allegation of longer detention or fingerprinting or further processing might tend to minimize any ultimate damage award, but does not distinguish this case from *White* or *Whiting* or *Albright* in terms of whether Knight was seized.  Such steps are not essential for a seizure.  The essential feature of a Fourth Amendment seizure is that law enforcement officials have acted intentionally so that a reasonable person in the subject's position would not feel free to leave.  *Leaf v. Shelnutt*, 400 F.3d 1070, 1089 (7th Cir. 2005); *Tesch v. County of Green Lake*, 157 F.3d 465, 472 (7th Cir. 1998).  The intentional act here was the securing of an arrest warrant.  When Knight appeared to meet with Constantino, he surely understood that the arrest warrant gave him the power to prevent her from leaving.  And Knight herself understood that he had that power.  She was not free to leave unless and until Constantino permitted her to leave.

*Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 199-200 (7th Cir. 1985), provides a useful comparison.  In *Rodgers*, the Seventh Circuit held that a suspect was not seized when he drove to a police station.  He did so not in response to an arrest warrant, but in response to a verbally abusive telephone call from a police detective.  The court based its decision on the absence of an arrest warrant, as well as on the "distancing inherent in the tenuousness of a telephone

conversation" and the ease with which the person could have hung up the phone. *Id.* at 200.  The court explained:

> We do not believe that a telephone call to an identified suspect from a detective investigating a charge of vandalism constitutes such a restraint on the suspect's freedom that his coming to the station house is anything other than a voluntary action.  *That Pagano told Rodgers he would secure an arrest warrant if Rodgers refused does not alter the outcome; Rodgers was free to demand that Pagano do just that.*  Pagano was not even confronting Rodgers physically; Rodgers could have hung up the phone.  That Pagano may have been verbally abusive does not elevate the phone call, with the distancing inherent in the tenuousness of a telephone connection and the ease with which Rodgers could have hung up the phone, into a seizure for purposes of the Fourth Amendment.

771 F.2d at 200 (emphasis added).  It is easy to infer from this discussion that if an arrest warrant had been issued, a self-surrender in response to that warrant would have amounted to a seizure.

The mere existence of an arrest warrant did not necessarily amount to a seizure of Knight.  The seizure occurred when she learned of the warrant and submitted to that state authority that had caused issuance of that arrest warrant.  That was not a voluntary act on her part in any meaningful sense of the term.  See *Spiegel v. City of Chicago*, 106 F.3d 209, 211 (1997) (A person may be seized "if he is not touched at all but submits to an officer's order *accompanied by a show of authority*, thus restraining his liberty.") (emphasis added).

Defendants also argue that even if Knight was seized, there was probable cause for the seizure based on the information Constantino says he received from

the furniture store.  The argument cannot prevail on a motion to dismiss.  Knight alleges that Constantino provided false information and a forged affidavit to support the charge and the arrest warrant.  In light of the allegations that Knight had given the store a post-dated check and that the store representative denied having signed the probable cause affidavit, the court cannot assume that Constantino had probable cause for the criminal charge or issuance of the arrest warrant.

Accordingly, Count I states a viable (if modest) Fourth Amendment claim against Constantino in his individual capacity.[1]

III.   *Due Process Claim*

Count II alleges that Constantino violated Knight's due process rights under the Fourteenth Amendment when he requested and took $50 from her as a condition for dismissal of the charge against her.  Cplt. ¶¶ 64-70.  Defendants

_____

[1]Knight included in Count I a claim of unreasonable seizure under the Indiana Constitution.  The judges of this federal court have consistently declined to find an implied right of action for damages under provisions of the Indiana Constitution's bill of rights that do not expressly provide for compensation because no Indiana court has yet recognized such a right.  See, *e.g.*, *Estate of O'Bryan v. Town of Sellersburg*, 2004 WL 1234215, *21 (S.D. Ind. May 20, 2004) (Hamilton, J.), and cases cited therein.  Magistrate Judge Rodovich of the Northern District has certified to the Indiana Supreme Court the question whether an implied right for damages exists under Article I, § 9 of the Indiana Constitution, which protects freedom of speech.  *Cantrell v. Morris*, 2005 WL 1159416, *8 (N.D. Ind. May 17, 2005).  The issue remains pending before the Indiana Supreme Court.  Until the Indiana Supreme Court or Seventh Circuit directs otherwise, the court adheres to its prior rulings on this question and dismisses the state claim.

argue that Count II fails to state a claim because Knight was not deprived of her property.  The theory seems to be that the money "belonged to the furniture store because it had to pay a non-sufficient funds fee to its bank after Ms. Knight's check bounced."  This is a startling theory, and one that defendants have not supported with any case law.  The defense theory is inconsistent with virtually all of the law and procedure governing unsecured debts.

Even if one assumes that Knight had actually still owed the furniture store any money at all on August 6th, the $50 in cash was still her property.  A civil court would not have been authorized to seize her property to pay a debt to the store unless and until a final judgment had been entered, after notice and an opportunity for a hearing. See generally *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321, 330-31 (1999) (federal court had no authority to issue preliminary injunctive relief freezing defendant's assets prior to entry of judgment on claim for payment of unsecured debt where plaintiff had no lien or equitable interest in assets).  The cash in Knight's pocket was still her property even if she had been insolvent (which she was not) and even if she had still owed the store any money (which she did not).  When a state official demanded payment of that cash as a condition of dismissal of criminal charges (and quashing of an arrest warrant), compliance with the demand cannot fairly be deemed voluntary.  Plaintiff has alleged sufficiently that Constantino deprived her of her property without due process of law.

IV.    *Immunity Doctrines*

The defendants also assert that Constantino is entitled to absolute or qualified immunity. A defendant bears the burden of proving that either immunity is justified under the circumstances. *Burns v. Reed*, 500 U.S. 478, 486 (1991).


A.    *Absolute Immunity*

Constantino was an investigator who was on the staff of the Prosecutor's Office. Prosecutors are protected from civil liability by absolute immunity for their actions as an advocate prosecuting a case. *Kalina v. Fletcher*, 522 U.S. 118, 125-26 (1997); *Burns*, 500 U.S. at 492. "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). Only qualified immunity may apply, however, to a prosecutor's work as an investigator. *Kalina*, 522 U.S. at 126; *Burns*, 500 U.S. at 492-96.


In *Kalina*, the prosecuting attorney personally attested to the truth of the allegations in a certification for probable cause. 522 U.S. at 121, 130. The Supreme Court noted that if the prosecutor had not personally sworn under penalty of perjury to the truth of the certification, she would have been afforded absolute immunity. *Id.* at 129. By certifying the allegations, however, the prosecutor was no longer functioning as an advocate and instead was functioning as a complaining witness who was not entitled to absolute immunity. *Id.* at 130-

31; see also *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986) (police officer who submitted criminal complaint and supporting affidavit to court could be entitled to qualified immunity but not absolute immunity).   In this case, investigator Constantino signed the charging information and swore to the truth of the factual accusations.   By certifying the averments, Constantino ultimately functioned as a complaining witness.   That act renders absolute immunity inapplicable.   In addition, in light of allegations that the furniture store's representative denied signing the probable cause affidavit, one may fairly infer from the complaint an accusation that Constantino knew he was submitting a false and forged probable cause affidavit.   The truth of that accusation remains to be determined, but it cannot be resolved on a motion to dismiss under Rule 12(b)(6).

B.    *Qualified Immunity*

Qualified immunity protects public officials who perform discretionary functions from liability and even from suit for actions that do not violate clearly established constitutional law.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The court must answer two questions.   First, does Constantino's conduct as alleged in the complaint, amount to a constitutional violation?   *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994).   Second, if so, were the constitutional standards clearly established at the time Constantino acted?   *Id.* If both questions are answered yes, then qualified immunity does not bar suit or liability.   *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

As explained above, Knight's allegations that Constantino used false information and accusations to file a criminal charge and to obtain an arrest warrant sufficiently allege a violation of the Fourth Amendment.  Also, Knight's allegations that Constantino extracted $50 from her without a legal or factual basis for doing so are sufficient to allege a deprivation of property without due process of law.

The applicable law was also well established at the time of Constantino's alleged actions in August 2005.  A reasonable law enforcement officer would have understood at that time that he could not knowingly make false accusations against a person to pursue a criminal charge and to secure an arrest warrant. *E.g.*, *Malley*, 475 U.S. at 345 (rejecting defendant's argument that the act of applying for a warrant was objectively reasonable *per se*; qualified immunity would not be appropriate where a reasonable officer in defendant's position would have known that his affidavit was insufficient to establish probable cause and that he should not have applied for the warrant); see also *Olson v. Tyler*, 825 F.2d 1116, 1118 (7th Cir. 1987) (if an officer seeking a warrant purposefully or recklessly withholds facts that could negate probable cause, the officer may be liable for violating the victim's civil rights); *Treece v. City of Naperville*, 1998 WL 142391, *11 (N.D. Ill. March 25, 1998) (officer did not have qualified immunity from suit because "a reasonable officer could have understood that falsifying police reports and fabricating charges violated [plaintiff's] rights under the Fourth Amendment").

Similarly, a reasonable officer in Constantino's position would have understood that he could not use false criminal charges to extract the $50 payment from Knight. See, *e.g.*, *Brokaw v. Mercer County*, 235 F.3d 1000, 1023 (7th Cir. 2000) (a plaintiff "can establish a clearly established constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue"). No reasonable public official could possibly believe that the conduct alleged by Knight with respect to her due process claim was constitutionally permissible. See *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) (affirming denial of qualified immunity; law was clearly established in 1967 that those charged with upholding the law may not frame citizens for crimes they did not commit; concept is fundamental to our system of justice); *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (reversing grant of qualified immunity; law was clearly established that deprivation of liberty resulting from fabrication of evidence by a prosecutor acting in an investigating capacity could violate plaintiff's right to due process).

The court assumes that the law was not as well settled as to whether Knight's appearance in response to the arrest warrant should be deemed a seizure for purposes of the Fourth Amendment. Any uncertainty on that score, however, does not support a defense of qualified immunity. The focus of the qualified immunity defense is on the officer's *intentional* actions. The alleged intentional actions by Constantino were filing a criminal charge, obtaining an arrest warrant, and demanding a cash payment, all based on accusations that he knew (the court

must assume) were false.  It remains to be seen whether plaintiff can prove those allegations, but no reasonable police officer would have believed that such actions were constitutional.

Constantino thus is alleged to have set in motion a process that very easily could have resulted in a more conventional custodial arrest.  For example, if a police officer had stopped Knight's car to caution her about driving too fast or rolling slowly through a stop sign, a routine check could have turned up the arrest warrant.  The fact that a seizure of Knight occurred more gently, as a result of her decision to meet with Constantino in his office, might affect any ultimate damage award, but that fact does not affect at all whether his actions were or were not consistent with the Fourth Amendment.  Constantino is not entitled to qualified immunity, at least based on the allegations in Knight's complaint.

V.    *Indiana Public Records Act*

Count III of Knight's complaint alleges that Prosecutor Brizzi violated the Indiana Access to Public Records Act by failing to produce documents describing Constantino's education and training background, previous work experience, and first and last dates of employment.  See Ind. Code § 5-14-3-4(b)(8)(A) (providing that such personnel records are public records).  The complaint sets forth a series of communications between Knight's attorney and the Prosecutor's Office in which the Prosecutor's Office ultimately stated that it had no documents responsive to that request.  Cplt. Ex. K & M.  Knight's attorney says he does not believe that

-20-

response, but that disbelief does not support a claim for relief.  Count III must be dismissed because it fails to allege an improper denial of access to a public record that actually exists.  Of course, if further discovery in this case turns up such a record that should have been produced, the claim might be reinstated by amendment of the complaint.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss is denied with respect to the federal individual capacity claims against defendant Constantino in Counts I and II.  The motion is granted in all other respects.

So ordered.

Date: May 31, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Clifford W. Shepard
consprolaw@aol.com

Jeffrey Kevin Eicher
jeffeicher@aol.com

Lakshmi Devi Hasanadka
CORPORATION COUNSEL
lhasanad@indygov.org